UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Crim. No. 22-10057-AK |
| v. | ) | |
| | ) | |
| MONICA CANNON-GRANT, | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through the undersigned Assistant U.S. Attorney, requests that the Court sentence defendant Monica Cannon-Grant (hereinafter, "defendant" or "Cannon-Grant") to 18 months' incarceration, a sentence that is within the United States Sentencing Guidelines ("Guidelines") as calculated by the United States Probation Office, as well as three years of supervised release and forfeiture and restitution in accordance with the Plea Agreement (Dkt. No. 209).

I. Advisory Sentencing Guidelines

The government's position with respect to the Sentencing Guidelines, which is set forth in greater detail on pages 2-3 of the Plea Agreement, is:

(i) in accordance with USSG § 2B1.1(a)(1), defendant's base offense level is 7, because wire fraud conspiracy, wire fraud, and mail fraud have a statutory maximum term of imprisonment of 20 years or more;

(ii) in accordance with USSG § 2B1.1(b)(1)(F), defendant's offense level is increased by 10, because the loss amount attributable to the charged counts is greater than $150,000 but not more than $250,000;

(iii) in accordance with USSG § 2B1.1(b)(9)(A), defendant's offense level is increased by 2, because the offenses involved misrepresentations with respect to defendant's conduct on behalf of a charitable organization;

(iv) in accordance with USSG § 3D1.4, defendant's offense level is increased by 1, because there is a five-level difference between the offense levels for defendant's wire fraud counts and defendant's tax-related counts;

(v) in accordance with USSG § 3E1.1, defendant's level is decreased by 3, because the defendant has accepted responsibility for defendant's crimes; and

(vi) in accordance with USSG §4C1.1(a), defendant's level is decreased by 2, because the defendant qualifies as a zero-point offender.

Accordingly, the total offense level is 15. The defendant's criminal history category is I, which results in a GSR of 18 to 24 months' imprisonment. Presentence Investigation Report ("PSR") at ¶ 130.

II. Factual Background

Ms. Cannon-Grant told the Suffolk County District Attorney's Office that she would use public grant funds to work with youth in anti-violence efforts:[1]

> Violence in Boston plans to bring 10 at risk young men and 2 adult youth workers from the under-served community of Roxbury on a three day Violence Prevention Retreat in Philadelphia. The purpose of this trip to give these young men exposure to communities outside of the violence riddled neighborhoods tha they navigate daily. During this retreat we will focus on community building activities ,developing coping skills to deal with trauma and violence and focus on increasing morale.

Except there would be no trip to Philadelphia, no community building, and no activities to help "at risk young men" from Roxbury develop coping skills to deal with trauma and violence. (PSR ¶¶ 13-14). But Ms. Cannon-Grant knew this all along because on June 1, 2019, five days before she submitted Violence in Boston's ("VIB") grant application on June 6, 2019, she booked a three-night hotel stay for her family's vacation in Baltimore for July 11-14, while her Bank of America bank balance was $1.35. (Indt. ¶ 15).

[1] Excerpt from VIB's June 6, 2019 application for Community Reinvestment Grant funds from the Suffolk DA's Office.



**From:** Hotels.com <confirmation@mail.hotels.com>
**Sent:** Saturday, June 1, 2019 11:13 PM
**To:** cannon.[redacted]
**Subject:** Hotels.com booking confirmation 8129800540067 - Sonesta ES Suites Columbia Baltimore - Columbia

Dear Monica, your booking is confirmed. The hotel will charge you $1,211.04.

When Ms. Cannon-Grant was confronted with these VIB grant spending discrepancies a year later, she told VIB's controller that the VIB charges in Baltimore in July 2019 were all charity and mission related expenses to pay for her attendance at the Congressional Black Caucus:[2]





| Date | Description | Amount |
|---|---|---|
| 07/12/19 | CHECKCARD 0711 POPEYES #13114 COLUMBIA MD 24231689193400000100198 CKCD 5814 XXXXXXXXXXXX9703 XXXX XXXX XXXX 9703 | -29.31 |
| 07/15/19 | CHECKCARD 0711 SUBWAY 00544213 GREENWICH CT 24164079193255180448915 CKCD 5814 XXXXXXXXXXXX9703 XXXX XXXX XXXX 9703 | -18.48 |
| 07/15/19 | CHECKCARD 0711 BURGER KING 4NJ44 TRENTON NJ 24692169193100065907306 CKCD 5814 XXXXXXXXXXXX9703 XXXX XXXX XXXX 9703 | -45.65 |
| 07/15/19 | CHECKCARD 0711 BURGER KING 4NJ44 TRENTON NJ 24692169193100065907330 CKCD 5814 XXXXXXXXXXXX9703 XXXX XXXX XXXX 9703 | -6.07 |
| 07/15/19 | CHECKCARD 0711 FOOD COURT 4NJ44 TRENTON NJ 24692169193100065750466 CKCD 5814 XXXXXXXXXXXX9703 XXXX XXXX XXXX 9703 | -13.83 |
| 07/15/19 | CHECKCARD 0712 SONESTA ES SUITES COLMB COLUMBIA MD 24755429193161938937369 CKCD 3591 XXXXXXXXXXXX9703 XXXX XXXX XXXX 9703 | -605.52 |
| 07/15/19 | CHECKCARD 0711 SONESTA ES SUITES COLMB 410-9649494 MD 24755429193161938937377 CKCD 3591 XXXXXXXXXXXX9703 XXXX XXXX XXXX 9703 | -605.52 |
| 07/15/19 | CHECKCARD 0713 BUBBA GUMP SHRIMP CO 50 BALTIMORE MD 24013399194001650641256 CKCD 5812 XXXXXXXXXXXX9703 XXXX XXXX XXXX 9703 | -247.32 |
| 07/15/19 | CHECKCARD 0712 LAZ PARKING 770105 BALTIMORE MD 24055229194207488500733 CKCD 7523 XXXXXXXXXXXX9703 XXXX XXXX XXXX 9703 | -18.00 |
| 07/15/19 | 7-ELEVEN 07/13 #000350405 PURCHASE 7-ELEVEN COLUMBIA MD | -21.70 |
| 07/15/19 | CHECKCARD 0713 CHECKERS 1024 ELLICOTT CITYMD 24013399195001782430064 CKCD 5814 XXXXXXXXXXXX9703 XXXX XXXX XXXX 9703 | -59.71 |
| 07/15/19 | CHECKCARD 0713 PMI CRYSTAL DR PARKING ARLINGTON VA 24692169195100287435332 CKCD 7523 XXXXXXXXXXXX9703 XXXX XXXX XXXX 9703 | -10.00 |
| 07/15/19 | CHECKCARD 0713 MCDONALD'S M4266 OF VA ARLINGTON VA 24427339195710046701658 CKCD 5814 XXXXXXXXXXXX9703 XXXX XXXX XXXX 9703 | -10.44 |
| 07/15/19 | CHECKCARD 0714 SHAKE SHACK-1214 COLUMBIA MD 24692169195100368352265 CKCD 5814 XXXXXXXXXXXX9703 XXXX XXXX XXXX 9703 | -67.79 |

continued on the next page

Except there was no Congressional Black Caucus Foundation conference in July 2019 either,[3] and event and calendar records subpoenaed from the Congressional Black Caucus

[2] A copy of the defendant's hand-annotated VIB bank records was recovered at the defendant's residence pursuant to a search warrant (Oct. 18, 2021, 21-5455-JGD; Discovery production GRANT_00085009).

[3] The Congressional Black Caucus's annual convention was held from September 11-15, 2019. *See* https://cbc.house.gov/news/documentsingle.aspx?DocumentID=2096#:~:text=ESSENCE%20is%20an%20official%20CBCF,engagement%20and%20political%20power%20building.

Foundation, Inc. ("CBCF") showed that, while there were dozens of calendar event entries during the period that the defendant was in the Washington D.C. – Baltimore area, there was no mention of VIB or the defendant. This, of course, should have come as no surprise because the day after her vacation ended, the defendant told another charitable organization (whom she would also ultimately grift) that she was on vacation. (Indt. ¶ 18; PSR ¶ 14).[4]

| | |
|---|---|
| **From:** | Monica Cannon <cannon.m[redacted].com> |
| **Sent:** | Monday, July 15, 2019 3:56 PM |
| **To:** | eshield@cambridge[redacted] |
| **Subject:** | Emailing Monica Cannon Tax Form-1.pdf |
| **Attach:** | Monica Cannon Tax Form-1.pdf |

I signed it. Sorry I was on vacation

In 2017, when Ms. Cannon-Grant told the TJX Foundation, Inc. that she needed $10,400 to feed Boston Public school children for VIB's "Back Pack 68 Program," she claimed that none of VIB's funds were used to pay VIB staff:[5]

Total Paid Staff
0

Total Volunteer Staff
20

[4] Facebook posts by Cannon-Grant corroborated her admission that she was on vacation, including posts (7-12-2019 – Beautiful Hotel, Family and Rest….We made it to Baltimore, Maryland. Unavailable for anything other than posting pics."); (July 13, 2019 – posting Bubba Gump Shrimp Co. page, "My Family and I needed this…"; (7-13-2019 – posting Blerdcon page, "Drove to Virginia to be with Family and experience Blerdcon… It's a Party everytime we link up."). Defendant now claims that the Suffolk DA funds were used for a "Black Lives Matter event reuniting incarcerated Black mothers with their children." (Defense letter to USPO, 1/2/2016)

[5] TJX Foundation, Inc. food application submitted by the defendant on September 18, 2017. (Indt. ¶ 9, PSR ¶ 18).

That, too, was a lie. At the time of her September 2017 application, Ms. Cannon-Grant was several months in arrears on her rent, and as soon as she received the $10,400 donation check, she hid the proceeds by cashing the check a thousand miles away at a Wells Fargo bank in Alpharetta, Georgia, and used the cash to buy money orders to pay her back rent. (Indt. ¶ 12; PSR ¶ 18). That federal investigators were able to piece together where the defendant secretly funneled the donation money was the result of a lucky break – investigators found that Ms. Cannon-Grant kept records of her back rent payments on her phone (pictured below).[6]




On August 22, 2017, Cannon-Grant transformed a Black Lives Matter ("BLM") Cambridge $3,000 PayPal donation to VIB "For your back2school program" into a $3,400 cash withdrawal from Cannon-Grant's son's Bank of America account (ending 5307), below.[7] (*See* Indt. ¶ 18; PSR ¶ 17).

---

[6] Photo of money orders purchased by the defendant to pay back rent. (Indt. ¶¶ 10-12, PSR ¶ 18).

[7] In response to a restitution inquiry, a BLM Cambridge representative wrote via email: "Violence in Boston rendered the services by hosting a backpack drive and community block party that we, as an organization, were present and volunteered for. We also received acknowledgement from Lianne Hughes-Odom and Patricia Timmons that VIB and

| | | | |
|---|---|---|---|
| 08/28/17 | PAYPAL DES:TRANSFER ID:4QEJ2A8MKFDZ8 INDN:MONICA CANNON ID:PAYPALSD11 PPD | CO | 3,400.00 |
| 08/28/17 | MA TLR cash withdrawal from CHK 5307 | | -3,400.00 |

On August 8, 2019, a Cambridge Women's Commission $500 donation check to VIB to support a conference found its way to a Dorchester check cashing shop courtesy of Cannon-Grant. This was despite the fact that VIB had its own Bank of America bank account since January 2018. (*See* Indt. ¶ 13).

In September 2019, needing money for a rental car because her son got into a car accident which totaled the vehicle (Cannon-Grant Facebook post on September 18, 2019; GRANT_00081803) …

| | |
|---|---|
| **Time** | 2019-09-18 11:33:22 UTC |
| **Type** | Comments |
| **Summary** | Monica Cannon-Grant commented on her own post. `The car is totaled the person who hit him tore the axle off the car` |

… Cannon-Grant casually remarked in an unguarded text conversation with another community activist, that she intended to use her charity (presumably) to obtain money to pay for a rental car to temporarily replace the totaled vehicle belonging to her son, stating "I just got to figure out how to get a rental but I'm a see if I can get some white women to pay for it" (*see* GRANT_00081803):

BLM Cambridge paid to send several high school students on HBCU tours when they otherwise couldn't have afforded to go. There has been no fraud here and we are not victims." (Jan. 16, 2026, email). The government maintains that the defendant fraudulently diverted the $3,000 contribution from BLM Cambridge; moreover, the defendant allocuted to this conduct during her Rule 11 hearing (*see* Rule 11 Tr. at 23, 32, Sept. 22, 2025).




In April 2020, the defendant spun false financial statements to the City of Boston to obtain a $53,977 COVID-aid grant from the Boston Resiliency Fund ("BRF"). Once the check was deposited to VIB's account, Cannon-Grant – following her old playbook – systematically siphoned the money through cash withdrawals of $1,000 (5/8/2020), $15,000 and $14,000 (5/11/2020), and a $1,400 wire transfer to her Zelle account, pocketing thousands in cash for herself. When the City of Boston asked her to account for the funds, Cannon-Grant told them that no VIB staff were paid, with volunteers providing all the labor (*see* excerpt from defendant-signed and submitted report of expenditures to BRF on December 2, 2020, below). (*See* Indt. ¶¶ 20-27, PSR ¶¶ 15-16).

| | |
|---|---|
| staff_supported | 0 |
| volunteers | 77 |

Seeing more opportunities for COVID-cash grabs, within a few weeks of grifting thousands from the City of Boston's BRF fund, Ms. Cannon-Grant and her family submitted false applications to the Massachusetts Department of Unemployment Assistance (DUA) in May 2020 to obtain thousands of dollars in Pandemic Unemployment Assistance. Through their coordinated, fraudulent efforts, Cannon-Grant, her late husband, and one of her sons collected $145,269 in pandemic unemployment aid, all while gainfully employed and collecting income from other sources. (Indt. ¶¶ 41-71, PSR ¶¶ 23-28). When DUA finally caught wind of the defendant's fraudulent conduct, Cannon-Grant treated her culpability as a joke, texting her late husband: "Unemployment caught my ass!" (Indt. ¶ 61):




For Ms. Cannon-Grant, it was indeed a joke because stealing money was as easy as child's play. Unbowed by the discovery of her theft and within weeks of making light of being caught by "Unemployment," the defendant went back to her old playbook by spinning more lies for cash. This time, Boston's Office of Housing Stability ("OHS") was her target and she used her influence as a BLM leader to reach out directly to the Deputy Director of OHS for assistance in April 2021.

On May 11, 2021, Ms. Cannon-Grant forwarded the OHS application link to her late husband, through which they submitted a fraudulent application – seeking $4,200 monthly rent assistance – that claimed they were unable to work and that concealed income (including their fraudulently received unemployment assistance) from OHS. (*See* Indt. ¶¶ 75-80, PSR ¶¶ 29-32).

And despite acknowledging on the May 13, 2021, application that they were aware that Rental Relief Funds (meant for Boston residents actually facing housing insecurity) were "extremely limited," (*see* below) …

Funding is extremely limited and applications for the City of Boston's Rental Relief Fund will be reviewed on a rolling basis. If your application is selected for assistance you will be asked to provide documentation to verify eligibility, including but not limited to: Identification, Proof of Residency, Income documents, Lease agreement, Documentation of the COVID-19 related loss of income (or increased expenses).

Check to acknowledge and agree

… Cannon-Grant and her late husband collected the $12,600 in City-funds to pay for a $4,200/month new apartment rental in East Boston. Indeed, <u>one week</u> following their May 13, 2021, OHS rental assistance application, the purportedly "housing insecure" Cannon-Grant and her late husband applied for a $400,000 mortgage for a new home. (*See* Indt ¶ 87, PSR ¶ 8).

On top of all this, Ms. Cannon-Grant cheated her taxes and the IRS. When the defendant was stealing VIB funds in 2019 and 2020, she filed no tax returns. And when the defendant filed tax returns with the IRS for tax years 2017 and 2018, she lied about her income. (*See* Indt. ¶¶ 103-107, PSR ¶¶ 33-36).

III. <u>18 U.S.C. § 3553 Factors</u>

You don't get partial credit for stealing. But the defendant's letter to the U.S. Probation Office, in which she states her objections to the PSR, appears to suggest that precise line of argument to the Court. In her January 2, 2026 letter to Probation ("Def. Ltr."), Ms. Cannon-Grant contests certain factual allegations and argues:

- With respect to the overall VIB fraud: "Ms. Cannon-Grant used a substantial portion of the funds donated to support VIB's state mission by among other things: (1) paying to provide food to her community during the COVID pandemic; (2) supporting victims of violence in Boston by paying for their food, safe lodgings, and necessary household expenses after they experienced instances of violence; (3) providing students with food and school

supplies; and (4) building a VIB community center where victims of violence could access resources" (Def. Ltr. at 3).

- With respect to the Suffolk DA fraud: "Ms. Cannon-Grant objects to the description of her trip to Maryland in June 2019 as a 'vacation.' Ms. Cannon-Grant travelled to Maryland in June 2019 to attend an event associated with the Black Lives Matter movement reuniting incarcerated Black mothers with their children …. [and] Ms. Cannon-Grant used a substantial amount of the money from the DA's Office grant to help house, feed, and support a family that was victimized by gun violence in Boston. Ms. Cannon-Grant was a member of the Boston Trauma Response team in the summer of 2019. In that role, she responded to support a family victimized by gun violence in Boston. As a result of the violence, the family needed to be rehomed and fed. Ms. Cannon-Grant used money from the DA's Office to pay for hotel accommodations, food, and household needs for the family while they were displaced due to the violence" (Def. Ltr. at 3).

- With respect to the BRF fraud: "Ms. Cannon-Grant supplements as follows: Ms. Cannon-Grant used a substantial portion of the BRF grant to provide hot meals to the community during the COVID pandemic, including by paying for food (ingredients for the meals), kitchen expenses, and labor. A substantial portion of the ATM and cash withdrawals went toward those same expenses." (Def. Ltr. at 4).

- With respect to the TJX fraud: "A portion of the grant funds did go toward purchasing meals for needy children in the Boston Public Schools systems …. [and] [o]nly a portion of the proceeds were used to pay rent owed on her apartment …. In 2017, VIB was run out of Ms. Cannon-Grant and Mr. Grant's home (apartment). Ms. Cannon-Grant stored VIB supplies in the apartment, including food and backpacks for Boston Public Schools systems children" (Def. Ltr. at 4).

- And with respect to all of her cash withdrawals: "Ms. Cannon-Grant objects to the implication that cash withdrawals from the VIB bank account were inherently improper. To the extent that cash was used legally, to further VIB's stated mission, and in accordance with the terms of any grants or donations, the withdrawal or use of cash was not improper." (Def. Ltr. at 4).

The defendant's plea for partial credit for all the above stealing schemes should be rejected by the Court. First, when the defendant chose to make ATM cash withdrawals a hallmark of her fraud scheme, she ensured that there could be no accurate accounting of the funds, whether she stole all of the money or just some of it. That the defendant deliberately chose a method of stealing where money could not be traced or accounted for should not accrue to her benefit at sentencing.

Second, when the defendant tells us that she used cash "legally," whose word are we to rely on? Hers? This is a defendant who lied to the Massachusetts Department of Unemployment Assistance to collect pandemic employment benefits while being handsomely paid to be a DEI consultant and $2,788 per week as VIB's CEO (Indt. ¶¶ 49-59; PSR ¶¶ 23-28); who lied to Boston's Office of Housing Stability so she could live in a five-bedroom, three-bathroom, renovated condo in East Boston, while awaiting mortgage approval on a new house (*see* Indt. ¶¶ 72-80; PSR ¶¶ 29-32); and who lied countless times to donors and charities, whether it was "some white women" to pay for her son's car rental or multimillion dollar foundations from whom she could skim cash from the donations.

It is not a coincidence that Ms. Cannon-Grant has an innocent explanation in the Def. Ltr. for all of the schemes in which she skimmed cash (SCDAO fraud, TJX fraud, BRF fraud), but no explanations for all the schemes in which she couldn't (PUA fraud, OHS fraud). Notably, the defendant persists in lying to the Court, maintaining her trip to Maryland in June 2019 was not a "vacation" when, in fact, in her own words, <u>it was</u>. And even now, Ms. Cannon-Grant paints a picture of financial woe to the Probation Office (PSR ¶¶ 124-128) but omits the fact that she collected nearly $400,000 on Clark Grant's life insurance policy from September 2023 to January 2024 ($38,007.29 [9/19/2023]; $152,102.03 [10/24/2023]; and $190,330.55 [1/10/2024]).

Despite deposits of approximately $380,439 in a five-month period from 2023 to mid-2024, Ms. Cannon-Grant actively sought donations for her legal defense fund on her "FightForMonica" platform …




… and in September 2024 (after securing Court-appointed counsel), the defendant used her social media platform to seek additional money for her family:




In the above September 22, 2024, Facebook post, Ms. Cannon-Grant made an urgent plea to the public to donate to her GoFundMe account so that she wouldn't lose her home. Yet in the face of this "urgency," Ms. Cannon-Grant made $8,375 in purchases from Louis Vuitton, spent thousands of dollars for a trip to St. Thomas, thousands for another trip to Puerto Rico, and not counting the thousands of dollars she sent to her new husband and other family members, spent almost $100,000 altogether on travel and shopping alone in a ten-month period (*see* Chase records account ending 9227).

Finally, the defendant's argument for partial credit appears inconsonant with true acceptance of responsibility. (This is not to say that the defendant is undeserving of acceptance of responsibility pursuant to the Plea Agreement. The government has accepted Ms. Cannon-Grant's Rule 11 colloquy with the Court and stands by the Plea Agreement's provisions for acceptance.) Nonetheless, the defendant's minimization and downplaying of her offenses in the Def. Ltr. appear to underscore the lack of appreciation of the seriousness of her crimes.

Ms. Cannon-Grant may not have a "criminal history," but her history of criminal conduct is extensive, spanning nearly four years, with much of it conducted under the calculated guise of charity. Additionally troubling, following the initial fraud charges in this case, Ms. Cannon-Grant was not remotely dissuaded from continuing her fraudulent conduct which included, one, stealing her father's veteran's benefits (PSR ¶ 39), and two, hitting up the public for charity while enjoying the beaches of St. Thomas and San Juan, *see supra*. In a July 8, 2022, post-charge, defiant livestream posted on Facebook, Ms. Cannon proclaimed that she would be "dropping receipts" on her detractors and calling out her critics for "gaslighting." What the public now knows, however, is that the receipts say Louis Vuitton and the gaslighting is all her own.

For all of the forgoing reasons, the government believes that a sentence of imprisonment is sufficient but not greater than necessary to acknowledge the seriousness of the offense, justly punish the defendant, protect the public, and promote respect for the law. Accordingly, the government respectfully requests that the Court impose a sentence of 18 months' incarceration, three years of supervised release, restitution and forfeiture consistent with the Plea Agreement, and a $1,650 mandatory special assessment.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: */s/ Dustin Chao*
DUSTIN CHAO
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I, Dustin Chao, certify that I caused a copy of this memorandum to be served electronically via ECF on defense counsel and by e-mail to U.S. Probation.

*/s/ Dustin Chao*
DUSTIN CHAO
Assistant U.S. Attorney

Date: January 22, 2026